Filed 4/26/21  P. v. Brian H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077151 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. MH64508) |
| BRIAN H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.

Rebecca P. Jones, under the appointment of the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Brian H. appeals from an order after bench trial extending his commitment to Coalinga State Hospital (Coalinga) as a mentally disordered sex offender (MDSO) under Welfare and Institutions Code former section 6316.2.[1]  On appeal, he contends the order is not supported by substantial evidence.  He also argues that in closing argument the prosecutor made false statements about his mental health history.  We conclude the evidence supports the court's findings and that Brian forfeited the prosecutorial misconduct claim.  In any event, there was no misconduct and no prejudice.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Brian Molested a Four-Year-Old Girl.*

In 1980 when he was 23 years old, Brian molested a four-year-old girl by rubbing his hand on her vagina.  By some reports, he also digitally penetrated her.  Brian said "God" told him to have sex with the victim to save her from an abusive stepfather.  He was convicted of committing a lewd and lascivious act (Pen. Code, § 288, subd. (a)).

Before the offense, Brian had an extensive substance abuse history.  From age 12 to 23, he had taken LSD 30 or 40 times and had also used marijuana, methamphetamine, heroin, cocaine, and PCP.  Three days before molesting the victim Brian took LSD, and he had been drinking the day of the offense.

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.  Former MDSO statutes (§ 6300 et seq.) were repealed in 1982 (Stats. 1981, ch. 928, § 2) and replaced with the Sexually Violent Predators Act, section 6600 et seq.

Brian was found to be an MDSO and was committed to Patton State Mental Hospital (Patton).[2]  Now at Coalinga, he has remained involuntarily committed for nearly 40 years.

B. *Brian's History of Mental Illness*

Brian has a long history of mental illness.  The earliest report from Patton in the record, from 1987, diagnoses schizophrenia, pedophilia, and substance abuse.

In April 1999, Brian's mental health appeared to be improving.  He was responding to medications, showing "improved reality contact," and had completed an alcohol and substance abuse program.  He was discharged from Patton and placed in a less restrictive setting, Sylmar Health and Rehabilitation Center (Sylmar).  Unfortunately, Brian's progress was short lived.  By June he was again "actively delusional," believing he was a rock star and was entertaining "the world."

In 2005, a psychiatrist reported that Brian had "several semi-bizarre hallucinogenic and delusions experiences" and exhibited a "serious mental abnormality."  The physician concluded, "The possibility of [Brian] acting upon his sexually inappropriate desires in the future is certainly present as long as his schizophrenic illness has not completely resolved."

In a 2005 examination, Brian denied having any mental illness—while at the same time hallucinating he was Paul McCartney's friend.  Brian also reported he was "raped in a fantasy" and had to orally copulate a man "and pretend to like it."  Determining that Brian was in "marked denial about his sexual fantasies and proclivities" and "severely psychotic," the psychiatrist concluded he was "highly at risk for re-offense."

---

[2]    At age 12, Brian molested his four-year-old stepsister "three or four times" because he was "horny" and she "turned [him] on."

3

In September and October of 2005 Brian refused to take his medications and was observed masturbating while watching adolescent girls on television. Sylmar transferred him back to Patton.

In November 2009, a psychiatrist concluded that Brian has a "severe mental disorder" and represented a "substantial danger." The following year a court-appointed psychologist examined Brian and reported, "He does present as a pedophile and as a possible sex offender."

Later in 2010, Brian had fantasies about "raping children." He denied having any mental illness and attributed the fantasies to his medications. In 2011, Brian admitted having sexual fantasies involving minor girls. But he refused to participate in sex offender treatment at Patton and asked to be transferred to Coalinga. Patton acquiesced, and Brian was transferred.

In 2012, a psychologist reported, "Lack of insight into his mental illness and a dogged refusal to admit to even having a mental illness has been [Brian's] *modus operandi* for thirty years." After an examination in 2013, a Coalinga psychologist, Robert Wagner, Ph.D., reported that Brian's schizophrenia "is not in clinical remission." In June 2015, Dr. Wagner again reported that Brian's schizophrenia was not in remission. Brian sometimes refused to take his psychotropic medications. Brian denied having a pedophile disorder, claiming that apart from the 1980 crime, he has not had fantasies of pre-pubescent girls. Dr. Wagner opined that Brian has "minimal insight into his illness" and recommended he remain classified as an MDSO.

In 2016, Coalinga was required to obtain a court order to involuntarily medicate Brian because he was unwilling to take medication "and started to decompensate," having "grandiose delusions." A Coalinga report states that because Brian was "actively psychotic" when he molested the four-year-old, there was an increased likelihood that Brian would stop medicating if given

4

the opportunity. This placed him at "high risk of falling apart if he returns to the streets."

In February 2019 Brian told his psychiatrist, " 'They can't make me take the meds they want. I will only take whatever meds I want.' " Brian claimed to have " 'magic powers to save the whole race' " and can " 'read minds.' " Coalinga again obtained a court order to involuntarily medicate him.

C. *Brian's Sexual Interest in Minor Girls*

As noted, on two occasions in 2005 Sylmar staff saw Brian masturbating while watching a children's television program. Brian claimed he was doing nothing wrong because the show featured adolescent girls and were "not kid shows." Determining that Brian was "extremely psychotic and delusional," a psychiatrist stated:

> "There was evidence of ongoing sexual attraction to children, especially girls. He rambled extensively about his interest in television shows with attractive teenage girls starring in them, and was very interested in the fact that these teenage female characters are interested in boys and sex."

In 2009 and 2010, Brian again reported "sexual fantasies of underage females" including four-year-old's and sometimes rape.[3] But he denied having a mental illness, refused psychotropic medication, and insisted he could control his sexual impulses without treatment. The psychiatrist concluded:

> "The risk that he might re-offend is substantial given his mental disorder which is not in remission and is unlikely to

---

[3] Brian admits saying "raping children" but contends his words were taken out of context.

gain remission given his stated intention of not complying with his treatment needs if released to the community."

Between November 2010 and January 2011, Brian reported " 'daily sexual fantasies regarding children.' " Later in 2011, Brian told his psychiatrist that he felt justified molesting the four-year-old because God sent him a message he was supposed to have sex with the girl to heal her. After that examination, the psychiatrist stated that Brain's paranoia, delusions and "grandiose hallucinations" were "contributing factors in his crime and remain present today."

In 2019, Dr. Wagner again examined Brian and concluded, "[Brian] has a diagnosis of Pedophilic Disorder" and "Schizoaffective Disorder, Bipolar Type."

D. *The Petition to Extend Brian's Commitment*

Some legal background is helpful in placing the remaining chronology in context. Brian was adjudged an MDSO under laws that, despite being repealed as of 1982, remain applicable to him. (*People v. Rosalinda C.* (2014) 224 Cal.App.4th 1, 14–15.) Under those laws, certain sex offenders could be certified as an MDSO if "by reason of mental defect, disease, or disorder," the person was "predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others." (Former §§ 6300; 6302, subd. (a).)

If an MDSO could benefit by treatment in a state hospital, the court could order the defendant committed for treatment in such a facility for a period equal to the maximum term of imprisonment which could have imposed for the underlying crime. (Former §§ 6316, subd. (a)(1), 6316.1, subd. (a).) That commitment could be extended on a showing beyond a reasonable doubt that as a result of mental illness, the person is predisposed to commit sex offenses to such a degree that he presents a substantial danger

6

of bodily harm to others. (Former § 6316.2, subd. (a); *Hudec v. Superior Court* (2015) 60 Cal.4th 815, 821.) Courts have extended Brian's commitment 16 times.

In June 2019, Coalinga asked the San Diego District Attorney to petition once again to extend Brian's commitment. After the petition was filed, the court appointed two psychiatrists, Alan A. Abrams, M.D. and Richard G. Rappaport, M.D., to examine Brian and report. The court also ordered the Department of State Hospitals to produce his psychiatric records, which include a June 2019 evaluation by Dr. Wagner.

E. *The Evidence at Trial*

1. *Brian's Testimony*

The parties waived jury. Brian testified that he currently takes three different psychotropic medications. He admitted being sexually attracted to his four-year-old victim. He claimed he molested her because he had a message from "God" that sex would heal the girl. He also admitted in the past being very "fond" of Marsha Brady.[4]

Brian also admitted that in 2005 while at Sylmar he masturbated while watching a television show featuring adolescent girls. But he urged the court not "get the wrong idea" because they were "teenage girls," not "young girls." Brian stated he was "not ashamed" of being "aroused" by those teenagers. He added that if he "put down [his] defenses," he would be sexually attracted to teenage girls even now.

Brian testified about his recent hallucinations, including one where "the whole entire white race" and "then the whole black race show[ed] up outside [his] door." He claimed to have shot "lightning bolts of positive

---

4      Although there were no follow up questions, we assume Brian was referring to the adolescent character on the 1970's television show, The Brady Bunch.

energy to the black race" and later as part of the same hallucination he saw "Jesus Christ," who looked "extraordinary." He has hallucinated hearing Steve McQueen, Clint Eastwood, and Elvis Presley.

Asked if he has a mental illness, Brian responded he was "in bondage" from "being drugged on his psychotropic medication" when what he "needed was something to calm down." He claimed that his psychotropic medications forced him to "oral copulate [his] enemy."

Brian denied being a sex offender, stating, "I did a sex offense, but I'm not a sex offender." He denied having delusions and hallucinations. He believes his medical records are "plastered with lies" and "97 to 98 percent of [his] chart is lies." Asked whether if given the opportunity he would reduce his dose of psychotropic medications, Brian answered, "That depends on the medication . . . ."

2. *Dr. Rappaport's Evaluation*

By stipulation, the court also received in evidence written reports prepared by Drs. Rappaport, Wagner, and Abrams.

Dr. Rappaport examined Brian about two months before trial. Brian told him that since age 23 he has had "sexually oriented" delusions and hallucinations. He also had auditory hallucinations (hearing Paul McCartney and Cheryl Ladd), delusional ideation, paranoia, agitation, irritability, bizarre/disorganized behavior (urinating on the floor and taking his clothes off), loose associations, depressed mood, suicidal ideation, and mania. Rappaport notes that Brian exhibited acts of "verbal/physical aggression" during the past year.

In Dr. Rappaport's opinion, Brian has "minimal insight into his illness" and is not adhering to "a relapse prevention plan." Rappaport noted that Brian's pedophilia "does not distinguish sexual interest in pre-pubescent

8

children from pubescent adolescents." Additionally, he "has overt schizophrenic delusional thinking such as " 'I can talk to dead people . . . . I have voices in my head . . . . It is a mental illness and a gift.' " Rappaport believes that Brian has "Pedophilia and Schizoaffective Disorder"—and meets the criteria for being a MDSO.

### 3. *Dr. Wagner's Report*

Dr. Wagner examined Brian about six months before trial. Brian takes six different psychotropic medications and has "regularly expressed dissatisfaction with his medication regimen and most often wants something changed." Brian's schizophrenia is not in clinical remission and he noted that "invariably," an involuntary medication order is necessary. Wagner believes that "if [Brian] is ever to return to outpatient care in the community, he will need to have proven a long-term commitment to taking medication on a voluntary basis." He has "minimal insight" into his illness and criminal behavior and continues to meet the criteria to be classified as an MDSO.

### 4. *Dr. Abrams's Report*

Dr. Abrams, a forensic psychiatrist, examined Brian in October 2019. Brian told Abrams he has had female and male sexual partners and does not think about young children as sexual partners. Abrams believes that Brian is not a "substantial danger." Although acknowledging that Brian "has a severe mental illness," Abrams found "no evidence" that he is a pedophile. According to Abrams, masturbating while watching adolescent girls on television is "rude," but not indicative of pedophilia. Trained as an attorney as well as a psychiatrist, he was critical of the care and treatment Brian has received, stating that the records "suggest[] some lack of attention to treating [him] at the standard of care."

### 5. *The Trial Court's Ruling*

9

The trial court noted "with some interest" that Dr. Abrams agreed that Brian "has a severe mental illness." The court found other portions of Abrams's report unpersuasive, noting a "sort of . . . tentative tone,"— especially where Abrams stated he had "*attempted* to perform a comprehensive psychiatric evaluation" and had only received Brian's records one day before preparing his report. (Italics added.) After closing arguments, the court extended Brian's commitment for two years, finding beyond a reasonable doubt that he "still suffers from a mental disease, defect, or disorder" that predisposes him to commit sexual offenses to such a degree he presents a substantial danger of harm to others.

## DISCUSSION

### A. *The Recommitment Order Is Supported By Substantial Evidence*

Brian contends there is insufficient evidence to support recommittal under former section 6316.2. Specifically, he asserts that Dr. Rappaport's report is fundamentally flawed because he assessed whether Brian is a mentally disordered offender (MDO) under Penal Code section 2962, not the distinctly different issue of whether he is an MDSO under former section 6316.2. Additionally, Brian claims Dr. Wagner's report says "absolutely nothing" about whether he is predisposed to commit sexual offenses. He further discounts his own trial testimony, stating it "did little to elucidate any of the issues before the trial court." Thus, with only Dr. Abrams's report left standing, Brian argues there is no substantial evidence supporting the trial court's findings.

As Brian concedes, the usual substantial evidence rule applies. When reviewing a challenge to a civil commitment based on insufficient evidence, we consider the entire record in the light most favorable to the judgment to determine whether a reasonable trier of fact could find beyond a reasonable

10

doubt that the defendant meets the requirements for the commitment. (*In re Anthony C.* (2006) 138 Cal.App.4th 1493, 1503 (*Anthony C.*); *People v. Wright* (2016) 4 Cal.App.5th 537, 545 (*Wright*) [sexually violent predator commitment proceedings].)

1. *Dr. Rappaport's Report*

Dr. Rappaport's report, without more, cannot sustain the order because he applied an incorrect standard. Rappaport opines that Brian "qualifies" as an MDSO *because*: (a) he has two severe mental disorders, not in remission, and they cannot be kept in remission without medication; (b) these disorders are the cause of his committing the crime that led to his being sentenced; (c) he has been in treatment for these severe illnesses for more than 90 days in the preceding year; and (d) by reason of these mental illnesses, he represents a substantial danger to others.

The fundamental problem, as Brian points out, is these criteria are for committing one as a mentally disordered offender (MDO) under Penal Code section 2962.[5] Unlike an MDO commitment, an MDSO commitment requires substantial evidence that the defendant has a predisposition to commit

---

[5] Penal Code section 2962 provides in part: "[A] prisoner who meets the following criteria shall be provided necessary treatment by the State Department of State Hospitals as follows: [¶] . . . [¶] (d)(1) [A] chief psychiatrist of the Department of Corrections and Rehabilitation has certified . . . that the prisoner has a severe mental health disorder, that the disorder is not in remission, or cannot be kept in remission without treatment, that the severe mental health disorder was one of the causes or was an aggravating factor in the prisoner's criminal behavior, that the prisoner has been in treatment for the severe mental health disorder for 90 days or more within the year prior to the prisoner's parole release day, and that by reason of the prisoner's severe mental health disorder the prisoner represents a substantial danger of physical harm to others."

sexual offenses. (*People v. Dasher* (1988) 198 Cal.App.3d 28, 35.) This essential element is missing from the express basis for his opinion.

" ' " 'The chief value of an expert's testimony . . . rests upon the material from which his opinion is fashioned and the reasoning by which he progresses from his material to his conclusion . . . .' " ' " (*David v. Hernandez* (2017) 13 Cal.App.5th 692, 704.) " '[A]n expert's opinion is no better than the reasons upon which it is based.' " (*Ibid.*) By not stating whether Brian's mental illness predisposes him to commit sexual offenses, Dr. Rappaport's conclusion—that Brian remains an MDSO—is based on incomplete criteria. (See *McAlpine v. Norman* (2020) 51 Cal.App.5th 933, 939 ["an expert opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value"].)

This is not to say the Rappaport evaluation is wholly irrelevant. During that examination, Brian reported audio and visual hallucinations and delusions. And Dr. Rappaport's diagnosis, including that of pedophilia, is also unaffected.

Of course, the substantial evidence analysis does not end here. The testimony of a single witness, including the defendant, can constitute substantial evidence. (*People v. Lewis* (2001) 25 Cal.4th 610, 646.) Brian testified, and by stipulation the court also received Dr. Wagner's June 2019 report. Accordingly, we turn to this evidence.

12

### 2. *Brian's Testimony*

Brian contends his testimony "did little to elucidate any of the issues" and the expert reports are "the only evidence offered to support the trial court's ruling." We disagree. Former section 6316.2 requires a present assessment of the defendant's mental state, making Brian's trial testimony especially probative.

One need not hold a medical degree to realize from Brian's testimony that he has a profound mental illness or disorder. Brian testified that for the past 40 years he has taken care of "the whole human race." He explained that within six months of trial he saw a "big white, like, plastic floating up above the—above [his] window. And it was the whole entire white race." Then "the whole black race show[ed] up outside [his] door." He's had hallucinations involving television characters—"Marsha Brady," who gave him "a bunch of crap" and "Serena of Bewitched." These things are real to Brian. He denied having hallucinations, delusions, or schizophrenia.

"The term 'predisposed' means 'inclined,' 'susceptible,' or 'tending.' As used in the statute, the term is used to convey that the person's mental disorder creates in him a *tendency* to commit the wrongful acts." (*People v. Martin* (1980) 107 Cal.App.3d 714, 724.) Brian's medical records and testimony amply support a finding he is predisposed to commit sexual offenses involving minors. At age 12, Brian molested his four-year-old stepsister because, he explained, he was "horny." At trial, Brian admitted being sexually attracted to the four-year-old he molested in 1980, stating, "I did have an attraction to her. . . . So that is what the edge was that tipped the scales and I ended up rubbing her."

Also evidencing such predisposition, despite being confined at Sylmar— which obviously provides no opportunity for him to commit sex acts with

13

children—Brian was seen masturbating while watching a television show featuring teenage girls. At trial, Brian admitted being "aroused" by those images.

Equally probative of his predisposition, Brian sees nothing wrong with his sexual fantasies involving adolescent girls. He admonished the trial judge not to get "the wrong idea" because he was masturbating while watching an adolescent girl, not a four-year-old. Brian further testified that if he "put down [his] defenses," he would *now* be sexually attracted to teenage girls. That testimony is consistent with and corroborates medical records stating he has sexual fantasies involving girls 13 to 14 years old and also, although infrequently, girls age four.

Brian's testimony also supports the implied finding that because of this predisposition caused by his mental illness or disorder, he remains a substantial danger. An MDSO, by statutory definition, is a danger to others because he has a mental disorder predisposing him to commit sex crimes *and has already acted on that inclination.* Brian testified he openly masturbated while watching teenage girls on television (stating he did not even "pull [his] curtain"). Brian's little concern with being caught in the act indicates a disturbing lack in controlling such proclivities and impulses, and supports trial court's conclusion that he is a substantial danger to others.[6] (Former § 6316.2, subd. (a)(2).)

---

[6] Citing *Anthony C., supra,* 138 Cal.App.4th 1493 and *Wright, supra,* 4 Cal.App.5th 537, Brian disagrees, asserting there is "insufficient evidence of pedophilia." Both cases are off point.

In *Anthony C.,* one expert testified he was " 'not sure exactly how high a risk' " the defendant posed to the community if released. (*Anthony C., supra,* 138 Cal.App.4th at p. 1507.) Another expert testified the defendant presented only a " 'moderate' " risk—whereas the statute required a " 'serious' " risk. (*Ibid.*) In contrast here, psychiatrists opined that Brian

14

Additionally, amenability to treatment is relevant in determining the likelihood a person will reoffend. (*People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888, 921.) A patient's "refusal to cooperate in any phase of treatment" may support a finding that he "is not prepared to control his untreated dangerousness by voluntary means if released unconditionally to the community." (*Id.* at p. 929.)

Brian testified he refused to take one of his psychotropic medications and was currently on a forced medication regime. Brian was subject to involuntary medication orders in 2010, 2012, 2014, and 2017. At trial, Brian admitted that if released, he might self-medicate at a lower-than-prescribed dose. This is consistent with medical records indicating his limited insight into the need for treatment and his unwillingness to continue treatment if released into the community. In 2009, a physician noted that when Brian refused to medicate, his is "quite mentally unstable" and can " 'do anything,' " including a "sexual offense."

Further, Brian's testimony demonstrates he lacks understanding of and is in denial about his sexual fantasies and proclivities. According to a court-appointed psychiatrist (in 2005), this makes him "highly at risk for re-offense." For example, Brian claims that 98 percent of his medical records are "lies." At trial he denied having any mental illness, instead claiming to

---

represents "a substantial danger to others" in 2003, 2005, 2009, 2010, 2011, and most recently in 2019.

In *Wright*, the expert's conclusion that the defendant suffered from a mental disorder was based on assumed facts not supported by the record and was, therefore, "pure speculation" and "did not possess any evidentiary value." (*Wright*, *supra,* 4 Cal.App.5th at p. 546.) But here Brian admits molesting the four-year-old victim, similarly molesting his four-year-old step-sister, masturbating while watch adolescent girls on television, and fantasizing about sex with minor females. Unlike the situation in *Wright*, Brian's diagnosis is not speculative or unsupported by the record.

be held "in bondage" by his psychotropic medications. Perhaps most significantly in predicting future dangerousness, Brian sees nothing wrong with his sexual attraction to adolescent girls:

> "Q: At any point, where you aroused by the teenagers in 'Lizzie McGuire'?" [¶] . . . [¶]
>
> "A: Yes. . . . [¶] And I'm not ashamed of it at all. I grew up mostly my free life—my freedom of living was a teenager not locked up in some psycho fucking wacko hospital."

The court could reasonably conclude that Brian's lack of understanding about why he offends makes it likely he will reoffend. Further, Brian's failure to recognize his potential to commit another sexual offense, especially when considered with his longstanding history of medication noncompliance, creates a substantial danger he will reoffend and cause bodily harm to others. (Former § 6316.2, subd. (a)(2).)

### 3. *Dr. Wagner's Report*

Dr. Wagner's report provides further support for the court's finding that Brian is predisposed to commit sexual offenses and presents a substantial danger. He opined that Brian has "Pedophilic Disorder" and is an MDSO who "should be retained and treated at Coalinga." He bases this opinion in part on the 2005 masturbation incidents, Brian's statement advocating raping children, his report of daily sexual fantasies regarding children, and resistance to treatment and voluntary medication. Wagner believes that Brian has "minimal insight" into his illness and criminal behavior and without medication his aggression and threat escalates.

Brian contends Dr. Wagner's report is inadequate because it does not mention "the MDSO recommitment standard" nor does it expressly state that he is "predisposed" to commit sexual offenses to such a degree that he presents a substantial danger to others. In a related argument, Brian asserts

16

that although Wagner diagnosed Brain as suffering from pedophilia, he did not explain the basis for that opinion. Brian maintains these "glaring gaps in the record" result in an order unsupported by substantial evidence.

Brian's argument fails because Dr. Wagner did not merely express a general unsupported belief that Brian remains an MDSO. The *first sentence* of the report states that Brian "continues to meet criteria as a Mentally Disordered Sex Offender and should be retained and treated at Coalinga State Hospital." The remaining seven pages explain the basis for that opinion.

It is true, as Brian asserts, that the report does not contain the word "predisposed." However, Dr. Wagner concludes that Brian:

1. is psychiatrically unstable with delusions and hallucinations;

2. has "minimal" insight into his mental illness;

3. has sexual desires and fantasies involving children;

4. molested a four-year due to delusions related to his schizophrenia;

5. "invariably . . . requires being place on the involuntary [medication] order . . . ."; and

6. becomes threatening and aggressive when not taking psychotropic medications.

From these facts, the court could reasonably conclude that as a result of his mental disorder and unwillingness to voluntarily medicate, Brian is predisposed to committing sexual offenses that pose a substantial danger of bodily harm to others. Wagner explains that Brian is properly diagnosed as a pedophile because he has in the "past articulated or demonstrated sexual desires/fantasies involving children."

Moreover, although it is true that his most recent sex act with a child "was committed 40 years ago"—facilities like Patton and Coalinga provide no opportunity for Brian to act out his sexual proclivities with children. Because

17

he has lacked access to children for 40 years, his failure to molest another child "is not dispositive of whether he is likely to reoffend if released into society at large. Such an assessment must include consideration of his past behavior, his attitude toward treatment and other risk factors applicable to the facts of his case." (*People v. Sumahit* (2005) 128 Cal.App.4th 347, 353.)

Brian contends Dr. Wagner's report is flawed because it does not acknowledge previous evaluations that declined to diagnose pedophilia. However, for the most part those reports predate October 2005, when Brian masturbated while watching children's television. Since then, evaluators have commented on Brian's sexual attraction to children and diagnosed pedophilia. Although there are a few post-2006 reports that eschew that diagnosis, under the substantial evidence standard of review, the issue is not whether there is evidence to support a different finding, but whether there is evidence that, if believed, support the findings of the trier of fact. Similarly, the weight to afford Dr. Abrams's report is committed to the trial court's broad discretion. (*People v. Mercer* (1999) 70 Cal.App.4th 463, 466–467.) The court found Abrams's conclusions to not be credible, and as a reviewing court we do not second guess that determination.

B. *There Was No Prosecutorial Misconduct in Closing Argument*

Brian contends that in closing argument the prosecutor made "numerous false statements" about his treatment history and "misstated the opinions of every doctor whose evaluation was offered in evidence." He further asserts the prosecutor "argued non-existent facts outside the record" in an attempt to undercut Dr. Abrams's report and "abused" the court's trust "by lying about the facts."

18

1. *Brian Has Forfeited This Claim*

To preserve a claim of prosecutorial misconduct for appeal, trial counsel must make a timely and specific objection and, in a jury trial, ask the court to admonish the jury to disregard the impropriety. (*People v. Fayed* (2020) 9 Cal.5th 147, 204.) The failure to do so will be excused if doing either would have been futile. (*Ibid*.) Here, Brian concedes his trial counsel did not object during closing argument. And no reason appears that an objection would have been futile (except that, as we explain, it lacked merit). Accordingly, he has forfeited the claim on appeal. (*People v. Jackson* (2014) 58 Cal.4th 724, 765.)

2. *No Ineffective Assistance of Counsel*

Anticipating we might hold these arguments forfeited, Brian alternatively recasts the claim as one of ineffective assistance of counsel in failing to object. "He bears the burden of showing . . . (1) counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficiencies resulted in prejudice." (*People v. Centeno* (2014) 60 Cal.4th 659, 674.) Here, Brian fails to show that counsel's failure to object fell below professional norms because there was no misconduct warranting an objection.

a. *The Prosecutor Did Not Make False Statements About Dr. Abrams's Report.*

Brian contends the prosecutor made a false statement in asserting that Dr. Abrams was the only doctor who had ever questioned the diagnosis of pedophilia or found him not to be an MDSO. But the prosecutor said no such thing. Abrams claimed there were " 'no records' " that Brian " 'suffers from pedophilia at present or at any time while at [Coalinga].' " The prosecutor correctly asserted that Abrams was mistaken, stating:

"So Dr. Abrams is of the opinion that never—back in 1981 until today—has [Brian] ever suffered from pedophilia. That would make him unique. That would make him an opinion of one compared to the whole history of [Brian], which is he was found to be an MDSO. He has been recommitted as MDSO every two years since 1981 for 39 years."

      b. *The Prosecutor Did Not Make False Statements About Involuntary Medication Orders.*

Brian further asserts that he was "medication compliant for years" and, therefore, the prosecutor misstated facts by arguing he will not medicate unless someone is "standing over him making him do it" and does not voluntarily medicate "even while in confinement." However, we do not view a prosecutor's remarks in isolation, but rather " 'in the context of the argument as a whole.' " (*People v. Adanandus* (2007) 157 Cal.App.4th 496, 513.) As quoted below, when placed in context, the prosecutor did not misstate facts about Brian's compliance with taking medications; he even acknowledged there were times when Brian has been medication compliant, but reasonably questioned whether he would remain so if released:

"Finally—and I think what is most important is that literally nothing has changed from 1981 until now except the passage of time. . . . He has—at best—minimal insight into his mental illness, but I think it could be argued, he has really no insight into his mental illness. He doesn't think he is a pedophile. He thinks 97 to 98 percent of his treatment record are lies, that he is not like the other MDSOs. He doesn't share their weaknesses or their issues, and that he doesn't need treatment. He refuses to take medication. He's currently under forced medication. He has—he is forced to take medication and that has been his history since 1981. He is forced to take medication. *Once he is compliant for long enough, he gets in the right mind where he's agreeing to take it, but as soon as he is allowed to*

20

*take it on his own, he stops complying and he has to be forced to take it again.*"[7] (Italics added.)

### c. *The Prosecutor Did Not Misstate Expert Opinion on Predisposition.*

According to the prosecutor, Drs. Rappaport and Wagner opined that Brian is predisposed to commit sexual offenses due to his mental disorder. Brian contends this statement was false because "[n]either report says this."

Brian is correct that neither report contains the word "predisposed." But as we have already explained, Dr. Wagner's report concludes that Brian is an MDSO and contains findings from which the court could reasonably find the requisite predisposition. Similarly, Dr. Rappaport's report states that Brian "qualifies as a Mentally Disordered Sex Offender (MDSO)." " 'Prosecutors have wide latitude to discuss and draw inferences form the evidence at trial.' " (*People v. Shazier* (2014) 60 Cal.4th 109, 127 (*Shazier*).) Because by statutory definition an MDSO is predisposed to commit sexual offenses, a fair inference from Rappaport's report is that Brian is so predisposed.[8]

### d. *Even if Misconduct Occurred, There is No Prejudice.*

To prevail on a claim of prosecutorial misconduct based on remarks during closing argument, the defendant must show a reasonable likelihood

---

[7]     Brian also claims the statement, " 'literally, nothing has changed' " is false because at Sylmar he was "safe and compliant for the most part." Although the phrase "nothing has changed" may be an exaggeration, it is within the bounds of argument because in the following sentences the prosecutor specified the aspects of Brian's condition that have remained static.

[8]     That we have determined on appeal that Rappaport relied on improper criteria does not mean the prosecutor committed misconduct in arguing otherwise.

that the trier of fact understood or applied the complained-of comments in an improper or erroneous manner. (*Shazier, supra,* 60 Cal.4th at p. 127.) In this case, even assuming the claimed misconduct occurred, there was no prejudice. A judge with some 40 years' experience was the trier of fact. He stated he had read reports by Drs. Rappaport, Wagner, and Abrams. The case was tried, argued, and decided in less than one day. Having independently reviewed the record, we have no doubt that the court was cognizant of the evidence and was not misled by any factual misstatements in closing arguments.[9]

## DISPOSITION

The order is affirmed.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


IRION, J.

---

[9] Because of this disposition, it is unnecessary to address Brian's additional claim that "mentally ill defendants deserve greater protections from forfeiture incurred by their attorneys' failure to object" to prosecutorial misconduct.